UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERIC L. WALKER, II,

Plaintiff,

v. Case No. 2:25-cv-586-KCD-KRH

CAPTAIN TED GJERDE,

Defendant.
_______________________________________/

**ORDER**

Plaintiff Eric L. Walker II, a prisoner of the Florida Department of Corrections ("DOC"), sues Captain Ted Gjerde under 42 U.S.C. § 1983. Plaintiff alleges that Defendant, a correctional officer at the Desoto Correctional Institution where Plaintiff was imprisoned, violated his First, Fourth, Eighth, and Fourteenth Amendment rights by (1) searching his cell and conducting a strip search without cause; (2) employing excessive force, threatening the use of chemical spray, and allowing him to be sexually assaulted during the cell extraction; (3) moving him into a confinement cell where he was deprived of clothing, bedding, and other amenities; and (4) denying him access to his legal materials. Defendant moves (Doc. 21) under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint both because Plaintiff failed

to exhaust his claims through the DOC's grievance process and because the complaint lacks merit. Both arguments prevail.

## I. Grievance Procedures

Defendant correctly argues that exhaustion of administrative remedies is required here. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

### A. DOC's Grievance Procedures

Chapter 33-103, Florida Administrative Code, establishes the procedures for prisoner grievances and appeals. The purpose of the grievance process "is to provide an inmate with a channel for the administrative settlement of a grievance" and to provide "the inmate with the opportunity of having a grievance heard and considered, [which] will assist the Department by providing additional means for internal resolution of problems and improving lines of communication." § 33-103.001. The procedures establish (1) what issues can and cannot be addressed in the grievance process, (2) deadlines for filing, responding to, and appealing a grievance, and (3) forms that must be used in the grievance process. The three steps in the process are an informal grievance, a formal grievance, and an appeal to the Secretary.

Except for a few specific issues not relevant here, the first step in the grievance process is for the inmate to submit the required form "by placing the informal grievance in a locked grievance box," where it will be retrieved and "forwarded to the staff member who is responsible in the particular area of the problem . . . ." § 33-103.005(1). The response to the informal grievance must be written, returned to the inmate with both the original grievance and one copy, and state the reason or reasons why the grievance was approved, denied, or returned without action. § 33-103.005(4).

The second step is a formal grievance, which is submitted to one of the wardens at the institution. Each formal grievance "must address only one issue or complaint" and include a copy of the informal grievance and response unless exempted by regulation. § 33-103.006(2). A formal grievance is retrieved and processed daily during the workweek, date-stamped, and recorded on a grievance log. And the inmate is provided a receipt. A designated institutional official investigates the issue and provides the inmate a response within twenty days. If not satisfied with the response, the inmate may appeal.

The third step is an appeal to the Office of the Secretary. Each appeal is limited to only one issue and must include a copy of both the formal grievance and the response. § 33-103.007(2). The Bureau of Policy Management and Inmate Appeals reviews, investigates, and responds to each appeal.

The procedures allow both an inmate and a responding official to request an extension of each deadline within the grievance process. § 33-1003.011(1) and (4). Also, the inmate may proceed to the next step in the process if a response is not timely received, but "[i]f this occurs, the [inmate] must clearly indicate this fact when filing at the next step." § 33-103.011(4).

**B. Controlling Principles**

A prisoner must properly exhaust the prison's administrative remedies. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). The failure to "properly exhaust" administrative remedies will bar a prisoner from pursuing a claim in federal court. "[S]aying that a party may not sue in federal court *until* the party first *pursues* all available avenues of administrative review necessarily means that, if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court." *Ngo*, 548 U.S. at 100 (italics original); *see Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005) ("[W]e hold that the PLRA's exhaustion requirement does contain a procedural default component: Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim.").

"[T]he purpose of administrative exhaustion . . . 'is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues.'" *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985)). Consequently, "[a] prisoner must exhaust each claim that he seeks to present in court." *Arias v. Perez*, 758 F. App'x 878, 880 (11th Cir. 2019); *accord Jones*, 549 U.S. at 219-20 ("All agree that no unexhausted claim may be considered."). But if a complaint alleges some claims that are exhausted and some that are not, "the court proceeds with the good and leaves the bad." *Jones*, 549 U.S. at 221.

This mandatory exhaustion requirement applies even when administrative remedies do not allow the requested relief. *Ngo*, 548 U.S. 85 ("[A] prisoner must now exhaust administrative remedies even where the relief sought — monetary damages — cannot be granted by the administrative process."); *Booth v. Churner*, 532 U.S. 731, 736 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). However, a prisoner must exhaust only those administrative remedies that are "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for

the action complained of."). The Eleventh Circuit has further explained the meaning of "availability:"

> In *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016), the Supreme Court held that § 1997e(a)'s exhaustion requirement is "mandatory" and that courts therefore "may not excuse a failure to exhaust" due to "special circumstances." There is an exception to the exhaustion requirement, however, that is "baked into" § 1997e(a)'s text: "[a]n inmate need exhaust only such administrative remedies as are 'available.' " *Id.* at 1862. . . . The Court "note[d] as relevant here three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief:" (1) when the procedure "operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process though machination, misrepresentation, or intimidation." *Id.* at 1859–60.

*Varner v. Shepard*, 11 F. 4th 1252, 1258 (11th Cir. 2021).

A defendant has the burden of proving that a prisoner did not fully exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that lack of exhaustion is an affirmative defense); *Dixon v. United States*, 548 U.S. 1, 8 (2006) (recognizing that the burdens of both production and persuasion are on the same party). Defendant supports his motion to dismiss with an affidavit from the DOC's Bureau Chief in charge of grievance appeals and with copies of Plaintiff's various grievances. (Exhibit A, Doc. 14-1.) As explained below, Plaintiff failed to properly exhaust the relevant claims against Defendant.

**C. Plaintiff's Grievances**[1]

The Eleventh Circuit requires a two-step analysis for deciding whether a prisoner meets the exhaustion requirement:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077, 1082–83 (11th Cir. 2008); *see also Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015).

Both Plaintiff and Defendant provide copies of Plaintiff's many grievances. (Docs. 1-1 and 14-1.) Two are related to the current claims against Defendant. First is Plaintiff's informal grievance about his initial encounter with Defendant, which grievance was denied. (Exhibit I, Doc. 18; Exhibit H, Doc. 14-8.) Second is Plaintiff's formal grievance, which was returned without

---

[1] Both parties limit their exhibits to grievances from the relevant time. In addition to earlier periods of imprisonment in the DOC, Plaintiff has been imprisoned since 2010 and is serving life sentences for burglary involving an assault and robbery with a gun or deadly weapon. At bottom, Plaintiff has had many years of experience using the grievance process.

action because it was not in compliance with the grievance procedures. (Exhibit E, Doc. 18; Exhibit L Doc. 14-12.)

Defendant contends that Plaintiff failed to properly exhaust the available grievance process because he failed to file a formal grievance that complied with the procedures, and then failed file an appeal to the Secretary. Plaintiff contends that he could not follow the usual grievance procedures because the institution failed to respond, and he argues that his situation meets the third exception noted in *Ross* because the "prison administrators [failure to respond to his grievances] thwart[ed him] from taking advantage of a grievance process." *Ross*, 578 U.S. at 644.

Plaintiff's contention appears to be supported by the exhibits because the Assistant Warden approved Plaintiff's later grievances about not receiving responses to earlier grievances. (Exhibit F Doc. 18; Exhibits M and N, Doc. 14-13 and 14.) Plaintiff argues that he could not complete the exhaustion process without being timely provided copies of his grievances.

But as outlined above, Chapter 33-103.11 authorizes filing an appeal to the Secretary without attaching the grievances and responses from the institutional level **if** the inmate explains why the appeal does not follow the usual procedures. Plaintiff never appealed to the Secretary, and he does not contend otherwise. Consequently, Plaintiff failed to properly exhaust the

claims alleged in this civil rights action as required by Section 1997e(a). Nevertheless, as explained below, his claims lack merit.

## II. Merits

### A. Standard of Review

Although a *pro se* pleading receives a generous interpretation, *see, e.g., Haines v. Kerner*, 404 U.S. 519 (1972), the complaint must meet certain pleading requirements. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and must provide "more than labels and conclusions [or] a formulaic recitation of the elements of the cause of action[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In short, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. As the Supreme Court has further explained:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "*Twombly* [i]s a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a)." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n.43 (11th Cir. 2008). As a consequence, *Twombly* governs a Section 1983 prisoner complaint. *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008).

On a motion to dismiss under Rule 12(b)(6), the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003), *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The allegations and any reasonable inference must combine to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Additionally, "plausibility" is greater than a mere "possibility" but less than a "probability":

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.
>
> [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "shown" — "that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 678-79. However, a plaintiff must show "proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation in § 1983 cases." *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007).

**B. Facts**

Plaintiff alleges (1) that on the morning of November 10, 2022, just after Hurricane Nicole had passed, Defendant entered Plaintiff 's housing unit, "rudely awakened" him, and ordered the prisoners to get ready for cell inspections; (2) that Defendant directed a sergeant to search both Plaintiff and his cell-mate and to search their cell; and (3) that during the search of the cell a plastic cup was thrown from the cell and rolled against Defendant's shoe. Plaintiff states that Defendant stepped on the cup believing it was trash, but Plaintiff called out to Defendant that the cup was his personal property.

Plaintiff represents (1) that, based on his apparent harsh tone of voice, Defendant reacted by "toss[ing] the cup into a pile of trash outside of the cell" and "charged directly at [Plaintiff] with clenched and closed fist;" (2) that Defendant stopped short of assaulting Plaintiff but instead "pull[ed] out his can of emergency chemical agent pepper spray and pointed it at [him];" and (3) that Defendant placed Plaintiff in handcuffs, directed the sergeant to pack up all of Plaintiff 's personal property, and escorted Plaintiff to a confinement unit. (Doc. 18 at 8–9.)

Upon arriving at the confinement unit, Defendant allegedly placed Plaintiff into a shower and ordered him to strip and falsely accused Plaintiff of not complying with the strip-search procedures. Defendant called for a "use-of-force audio/video camera" and directed his subordinates to complete the strip-search, which proceeded without incident. (Doc. 18 at 10-11.) Afterward, Plaintiff was moved into a "strip cell," in which he retained only his underwear and deprived of all personal property and bedding. A few hours later, Defendant approached Plaintiff's cell and ordered him to "cuff-up," and when Plaintiff questioned the order, Defendant called his superior for permission to use pepper spray.

A five-man extraction team arrived to forcibly remove Plaintiff from the confinement cell, during which Plaintiff alleges both that he was sprayed three times and that an officer grabbed Plaintiff's genitals during the scuffle. After a decontamination shower and during a post-use-of-force evaluation, a nurse noted that Plaintiff had sustained three cuts. Plaintiff alleges that Defendant "authorized" the filing of disciplinary charges and, in addition to assignment to a "strip-cell," placed on a seven-day "loaf meal."

Plaintiff alleges that he was held under these restrictions for four days before he was given his property and legal materials, and on the fifth day, he was given bedding materials.

**C. Fourth Amendment Claims**

Plaintiff alleges that the several strip searches violated his Fourth Amendment rights. But Plaintiff has no Fourth Amendment protection against unreasonable search and seizure while imprisoned. "[W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984). And this lack of Fourth Amendment protections extends to more than searches and seizures:

> Prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison," *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 1877, 60 L. Ed. 2d 447 (1979), but they do not enjoy the same Fourth Amendment rights as free persons. *See Harris v. Thigpen*, 941 F.2d 1495, 1513 (11th Cir. 1991) (noting that a prisoner retains only those rights consistent "with his status as a prisoner or with the legitimate penological objectives of the corrective system" (citations omitted)). Prisoners have no Fourth Amendment rights against searches of their prison cells, for example. *Hudson*, 468 U.S. at 526, 104 S. Ct. at 3200. They must submit to visual body-cavity searches executed without individualized suspicion. *Bell*, 441 U.S. at 558, 99 S. Ct. at 1884. They must undergo routine tests of their blood, hair, urine, or saliva for drugs. *Green v. Berge*, 354 F.3d 675, 679 (7th Cir. 2004) (Easterbrook J., concurring). Because of these and other limitations on prisoners' Fourth Amendment rights, courts have recognized that prisoners comprise a separate category of persons for purposes of the Amendment. *See, e.g., Jones*, 962 F.2d at 307 n. 2; *see also, e.g., Green*, 354 F.3d at 679 (Easterbrook, J., concurring).

*Padgett v. Donald*, 401 F.3d 1273, 1278–79 (11th Cir. 2005). Consequently, Plaintiff fails to state a claim upon which relief can be granted based on the Fourth Amendment.

**D. Conditions of Confinement**

Defendant allegedly ordered Plaintiff's placement into a confinement cell pending disciplinary proceedings and directed that he be denied personal property, all clothing except for his underwear, and served only a "loaf" for his meals. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 535, 547 (1979); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Whitley v. Albers*, 475 U.S. 312, 322 (1986) (recognizing "that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice."). Consequently, temporarily placing Plaintiff in restrictive housing violates no civil right. *See Adams v. James*, 784 F.2d 1077, 1082 (11th Cir. 1986) (recognizing "that prison officials control prison job assignments, cell assignments, and the like"); *Solliday v. Fed. Officers*, 413 F. App'x 206, 210 (11th Cir. 2011) ("[A]n inmate has no liberty interest in a particular classification, prison assignment, or transfer even if the inmate loses access to

rehabilitative programs and experiences more burdensome conditions than before.”).

Plaintiff also alleges that his due process rights were violated when he was moved into a confinement cell. But Plaintiff had no protectable right to any process before his move into a confinement cell because the conditions “did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.” *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Plaintiff’s brief stay in restrictive housing conditions was less than a week. Conditions that are possibly unconstitutional if a permanent feature of a prisoner’s life may not offend the Constitution if imposed only temporarily. *See, e.g., Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) (“A filthy, overcrowded cell and a diet of ‘grue[l]’ might be tolerable for a few days and intolerably cruel for weeks or months.”). Plaintiff’s conditions are wholly unlike situations in which courts have found a violation of *Sandin’s* “atypical [and] significant deprivation.” *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 224 (2005); *Vitek v. Jones*, 445 U.S. 480, 494 (1980); *Kirby v. Siegelman*, 195 F.3d 1285, 1291–92 (11th Cir. 1999).

Plaintiff was sentenced to prison as punishment for his crimes and he was placed in segregated housing initially to await disciplinary proceedings. “[T]he Constitution does not mandate comfortable prisons. If prison conditions are merely restrictive and even harsh, they are part of the penalty that

criminal offenders pay for their offenses against society." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Plaintiff fails to state a claim upon which relief can be granted based on the restrictive housing conditions.

**E. *Respondeat Superior***

Plaintiff next alleges that he was sexually battered by a prison guard during the cell extraction. This alleged battery occurred during the use-of-force when attempting to subdue Plaintiff. Because Defendant was the supervisor present during the use-of-force, Plaintiff faults Defendant from failing to protect him from a prison guard.

Plaintiff cannot pursue an action under Section 1983 based on pure vicarious liability. The complaint must allege facts showing the direct involvement of each defendant in the deprivation of Plaintiff's civil rights. *See Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 691, 694 (1978); s*ee also Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir. 2007) ("We do not recognize vicarious liability, including *respondeat superior*, in § 1983 actions.").

However, an officer can be held liable for not intervening "when a constitutional violation[,] such as an unprovoked beating takes place in his presence." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019). "To be held liable, the officer must both be 'in a position to intervene' and 'fail[] to do so.'" *Id.* A relevant consideration is whether the officer had time to intervene. *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016).

According to Plaintiff's own allegations, the battery occurred when the five-man extraction team was attempting to subdue him. Under these circumstances, Defendant cannot be said to have an opportunity to intervene, as the Eleventh Circuit explains:

> A non-arresting officer may be liable for another officer's use of excessive force, but only if "the non-intervening officer was in a position to intervene yet failed to do so." *Hadley[v. Gutierrez]*, 526 F.3d [1324,] 1330–31 [(11th Cir. 2008)]. Because the relevant events happened so quickly, the record does not reflect any point at which Anderson could have intervened to prevent Norris's use of excessive force, especially pepper spray, on Brown. Anderson accordingly is not liable for failure to intervene in Norris's use of force.

*Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740 (11th Cir. 2010). Plaintiff fails to state a claim upon which relief can be granted based on the alleged battery by an unnamed prison guard during the cell extraction.

**F. Access to the Courts**

Plaintiff also alleges that Defendant's actions denied him his right of access to the courts. To state such a claim, Plaintiff must show that he has incurred an "actual injury." *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). The means Defendant's conduct precluded his pursing a non-frivolous direct appeal, a collateral attack on a sentence, or a challenge to conditions of confinement. *Wilson v. Blankenship*, 163 F.3d at 1290.

First, Plaintiff fails to show that it was Defendant's acts that allegedly caused Plaintiff an "actual injury." His behavior precipitated his placement in

segregated housing initially to await disciplinary proceedings and then as disciplinary confinement, and prison officials determined that placement in a "strip cell" without any personal effects — including legal materials — was necessary under the circumstances. Whether that particular, austere housing assignment was proper is beyond this court's review. *McKune*, 536 U.S. at 39 ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Adams*, 784 F.2d at 1082 (recognizing "that prison officials control prison job assignments, cell assignments, and the like"). Regarding Plaintiff 's lack of access to his legal materials, Defendant's only act was to move Plaintiff into segregated housing. Defendant is not liable — because as discussed above *respondeat superior* precludes such liability — for the subsequent decisions by other prison officials regarding the removal of all personal effects, including the legal materials. Consequently, Plaintiff fails to state a claim upon which relief can be granted based on Defendant's act of moving him into segregated housing. Moreover, the exhibits (Exhibit K Doc. 18; Exhibit E, Doc. 14-5.) show that officials granted Plaintiff 's informal grievance for the return of his legal materials while still in segregated housing, and as a consequence Plaintiff was without his legal materials for only twenty-five days.

Second, Plaintiff fails to show that he sustained an "actual injury." Plaintiff represents that his lack of access to his legal materials for twenty-five

days (1) "forced [him] to try to belatedly compel discovery efforts for his US federal court case #3:22-cv-1466 which a deadline for had been pending at the time of [Defendant's] unconstitutional deprivation of [Plaintiff 's] liberty;" and (2) "caused a complete loss of witness statement efforts for his US federal case #3:21-cv-888 altogether, as papers containing the name of other inmates who were present at the time of the incident were never returned to the plaintiff causing him to loose four of the main claims of his case during summary judgement due to not having the witnesses and witness statement to back up his claims during summary judgement phase of his civil litigation claims." (Doc. 18 at 16.)

The docket for the first action Plaintiff references, *Walker v. Hattaway*, 3:22-cv-1466-LC-HTC (N.D. Fla.), shows (1) that, immediately before his placement in segregated housing, the defendants answered Walker's recently filed amended complaint (Docs. 33 and 37) and (2) that the only filing while he was without his legal materials was the defendants' moving for (and being granted) an extension of time to file dispositive motions. (Docs. 38 and 39.) Plaintiff represents that lack of access to his legal materials "forced" him to belatedly move to compel discovery, however, the docket shows that a couple of weeks before moving to compel discovery Walker moved both for the

appointment of counsel and to extend the deadline to provide pretrial materials.[2]

The docket in the second action, *Walker v. Day*, 3:21-cv-888-MCR-ZBC (N.D. Fla.), shows that the only filing while Plaintiff was without his legal materials was affecting the initial service process. Plaintiff asserts that, because a list of witnesses and witness statements were never returned to him with his legal materials, he lost four claims during summary judgment. At the summary judgment stage Plaintiff was represented by the same attorney who volunteered to represent him in the other case, 3:22-cv-1466.[3] Summary judgment against Plaintiff was denied on some claims, and summary judgment was granted against Plaintiff on other claims because the video evidence refuted his characterization of the defendants' actions (Doc. 64 at 31, 33, and 34); summary judgment was not granted because Plaintiff lacked sufficient affidavits from other prisoners.

Plaintiff fails to show that he sustained an "actual injury" and, consequently, he fails to state a claim upon which relief can be granted based on the temporary loss of access to his legal materials.

---

[2] A month later an attorney volunteered to represent Walker and negotiated a settlement. (Docs. 51 and 67.)

[3] Shortly after reaching a settlement in 3:22-cv-1466, counsel volunteered to represent Plaintiff in 3:21-cv-888 and succeeded in settling the claims that survived summary judgment. (Doc. 91.)

The motion to dismiss (Doc. 21) is **GRANTED**. The clerk must enter a judgment for Defendant Capt. Gjerde and **CLOSE** this case.

**ORDERED** in Fort Myers, Florida on August 17, 2026.

Kyle C. Dudek
United States District Judge

SA: TPA-4
Copies: All Parties of Record